## Richmond

### KATHERINE T. DOWELL

v.

### COMMONWEALTH OF VIRGINIA

No. 0390-85

Decided January 6, 1987

556

COUNSEL

Norman Lamson, for appellant.

Margaret Poles Spencer (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**BARROW, J.** — This is an appeal of a conviction of grand larceny in which the defendant contends that she was denied effective assistance of counsel because her attorney represented two co-defendants called to testify against her. We agree and conclude that the judgment must be vacated and the matter remanded to the trial court for further proceedings.

The defendant was charged with the larceny of four car radios from a Radio Shack store in a shopping mall in Albemarle County. An employee of another store in the same mall who attended high school with the defendant recognized her as she left the mall. He noticed that she returned very quickly through the same entrance and, ten to fifteen minutes later, exited the mall at the same location carrying two burgundy colored boxes "up against her chest." The boxes were not in bags and had no sales slips taped to them.

He then saw her return empty-handed to the mall where she met a man later identified as James Dennis, her stepfather. He was carrying a box similar to the ones she had carried. They talked briefly and she was heard to say that she needed some help. Her stepfather left the mall and went to a beige colored stationwagon parked in the parking lot.

The store employee told a mall security officer what he had seen, and they went into the parking lot and looked into the beige colored stationwagon. They could see the ends of the burgundy colored boxes which were covered with a floor mat on the floor in the back seat area of the automobile.

The security officer contacted the assistant manager of the Radio Shack store who then went to the parking lot and looked into the stationwagon. She identified the two boxes she could see under the floor mat in the back seat as boxes containing car radios which were on sale at the Radio Shack store that day.

Six boxes containing these radios were on display on a table six to eight feet inside of the store entrance. When contacted by the security officer, the assistant manager discovered that four of these were missing. A review of the store's sales receipts for that day revealed that none of the radios had been sold.

The assistant manager had seen the defendant in the store with her stepfather at various times during the early afternoon. She said that they came in, proceeded into the store, turned around and returned to the front of the store in the vicinity where the radios were displayed. She said that they made no purchases.

Later police conducted a search of the beige stationwagon still parked in the parking lot. In addition to the car radios, items of clothing containing price tags were discovered in the automobile.

At trial the first witness called on behalf of the Commonwealth was the defendant's stepfather. Defense counsel[1] objected to this witness being called because defense counsel represented him and he had "a matter pending in this court related to this." The trial court overruled the objection. After certain preliminary questions, defense counsel objected to the witness being asked if he were with the defendant on the date of the theft. He asserted that the answer to the question might tend to incriminate the witness. The court sustained the objection and later sustained objections to similar questions on the ground that the answers might tend to incriminate the witness. Defense counsel did not cross-examine this witness.

The second witness called by the Commonwealth was the defendant's mother. Defense counsel also objected to her being called because he represented her and anticipated that charges might be placed against her arising out of the same theft as that involved in this proceeding. Upon receiving assurances from the Commonwealth's Attorney that no charges would be placed against her at any time, the trial court overruled defense counsel's objection. She testified that she stole one of the radios from the Radio Shack store. She said that her daughter did not go to the Radio Shack store although she acknowledged that her daughter accompanied her and her husband to the mall on that occasion. Defense counsel did not attempt to cross-examine this witness.

The defendant contends that her attorney's simultaneous representation of her mother, her stepfather and herself violated her sixth amendment right to effective assistance of counsel. She ar-

---

[1] At that time the defendant was represented by M. Scott Goodman who was permitted to withdraw after the defendant was sentenced. Her current counsel was substituted for Mr. Goodman upon his withdrawal.

gues that an actual conflict of interest existed and, further, that the trial court had a duty to conduct an inquiry to determine if a conflict of interest did exist.

██ Representation of more than one defendant in connection with the same criminal charge does not violate the sixth amendment unless it gives rise to a conflict of interest. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). But requiring an attorney to represent two co-defendants whose interests are in conflict does deny a defendant his right to effective assistance of counsel. *Holloway*, 435 U.S. at 481; *Glasser v. United States*, 315 U.S. 60, 76 (1942).

██ "Absent special circumstances . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." *Cuyler*, 446 U.S. at 346-47. Trial courts must rely in the first instance upon the good faith and good judgment of defense counsel who have an ethical obligation to avoid conflicting representation and to advise the court promptly when a conflict of interest arises. *Holloway*, 435 U.S. at 485-86 (1978); *see* Virginia Code of Professional Responsibility DR 5-105(B)(1986).

██ Even though they may rely on defense counsel in the first instance, trial courts have a duty to closely monitor cases involving multiple representation "[s]ince a possible conflict inheres in almost every instance of multiple representation." *Cuyler*, 446 U.S. at 348. The mere possibility of a conflict of interest, which is not apparent or to which no objection is made, prompts no need for a trial court to conduct further inquiry. *Id.* at 347. However, if an objection is made to multiple representation or if the possibility of a conflict of interest is apparent, a trial court has a duty to conduct further inquiry to determine if an actual conflict exists. *Wood v. Georgia*, 450 U.S. 261, 272 (1981); *Holloway*, 435 U.S. at 434.

Thus, in this case we must first determine if a conflict of interest existed. In this regard an examination of the different combinations of incriminating and exculpatory testimony which may be elicited from a prosecution witness is helpful.

If a witness's testimony will incriminate both the witness and the defendant, the attorney must choose between negotiating con-

cessions in exchange for the witness's testimony or deterring the witness from testifying in order to protect the defendant. Consequently, the effect of such testimony would be to create a conflict of interest. *United States v. Mahar*, 550 F.2d 1005, 1008-09 (5th Cir. 1977); *see also United States v. Truglio*, 493 F.2d 574, 579 (4th Cir. 1974).

If the witness's testimony is expected to incriminate the witness but exculpate the defendant, the attorney must either assert the witness's right to remain free from self-incrimination at the sacrifice of the defendant's best interest or allow the defendant to be exonerated at the risk of the witness incriminating himself. Again, a conflict of interest would exist. *See Parker v. Parratt*, 662 F.2d 479, 484-85 (8th Cir. 1981), *cert. denied*, 459 U.S. 846 (1982).

Finally, if the witness's testimony is expected to exonerate the witness and incriminate the defendant, the attorney, if he does not use the witness's fifth amendment right to protect the defendant, will be forced to cross-examine the witness, his own client. If he must cross-examine the witness as an adverse witness, he cannot be expected to zealously attempt to discredit one of his clients to protect another. *Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir. 1974). Again a conflict of interest would exist. *Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir. 1980).

Furthermore, the attorney may be armed with information useful for effective cross-examination but unable to use it because it was acquired through confidential communications with the witness. *Parker v. Parratt*, 662 F.2d at 484; *Ross v. Heyne*, 638 F.2d at 983. Thus, "[j]oint representation of conflicting interest is suspect because of what it tends to prevent the attorney from doing." *Holloway*, 435 U.S. at 489.

Arguably, if the witness's testimony is expected to exonerate both the witness and the defendant, there would be no conflict. However, this could not have been the expectation in this case. The stepfather's assertion eliminates any possibility that his testimony would have exonerated both him and the defendant, and, although the mother attempted to exonerate her daughter, her testimony corroborated the defendant's presence at the scene of the crime in the company of one of its perpetrators.

Consequently, we hold that a conflict of interest arose when the Commonwealth sought to elicit the testimony of these two witnesses defense counsel represented in connection with the same offense.[2]

In addition, we hold that the circumstances were sufficient to require the trial court to investigate to assure that the defendant's right to effective assistance of counsel was not being violated. Where a probable risk of a conflict of interest is brought to a trial court's attention, the trial judge must take adequate steps to ascertain the extent of a conflict of interest in joint representation. *Wood*, 450 U.S. at 272; *Cuyler*, 446 U.S. at 437; *Holloway*, 435 U.S. at 484; *Wilson v. Morris*, 724 F.2d 591 (7th Cir.), *cert. denied*, 466 U.S. 976 (1984).

In this case the trial judge knew or should have known that a conflict of interest existed. Defense counsel objected to the Commonwealth calling the two witnesses whom he also represented in connection with this same offense. Although he did not seek to be relieved as defendant's attorney, he advised the court that he represented these witnesses in connection with the same offense for which the defendant was being tried. He asserted each witness's right to freedom from self-incrimination. He declined to cross-examine either witness. This was sufficient to bring to the court's attention a conflict of interest and to trigger an appropriate inquiry.

The Commonwealth contends that the record in this case is insufficient to show that an actual conflict of interest adversely affected the trial counsel's performance. However, where a trial court fails to initiate an inquiry when it knows or reasonably should know that a particular conflict may exist it is presumed that the conflict resulted in ineffective assistance of counsel. *Cuyler*, 446 U.S. at 347; *Holloway*, 435 U.S. at 489; *United States v. Ramsey*, 661 F.2d 1013, 1018 (4th Cir. 1981), *cert. denied*, 455 U.S. 1005 (1982); *see Strickland v. Washington*, 466

---

[2] Trial counsel's conduct in representing two or more clients with potential conflicting interests is not necessarily in contravention of the Code of Professional Responsibility. When there is a full disclosure to the parties and counsel can adequately represent all parties, he may do so and not violate the Code of Professional Responsibility. DR 5-105(C). In this case, while recognizing that trial counsel represented conflicting interests, we are not required to determine whether this was a violation of his professional responsibility as a lawyer.

U.S. 668, 692, (1984).

Furthermore, defense counsel's assertion of the stepfather's right to remain silent and his decision not to cross-examine the defendant's mother are sufficient to demonstrate that the conflict of interest adversely affected the attorney's performance. To require more would improperly seek disclosure of confidential communications of the attorney's client, *see Holloway*, 435 U.S. at 487 n.11, and would impose the "virtually impossible" task of assessing the impact of a conflict of interest on an attorney's options, tactics and decisions. *Id.* at 491.

The Commonwealth further asserts that the claim of ineffective assistance of counsel should not be heard in this appeal. Prior to July 1, 1985, this claim could not be considered on direct appeal but only by collateral attack. *Walker v. Mitchell*, 224 Va. 568, 571, 299 S.E.2d 698, 699 (1983). Since this claim was first raised in the trial court and assigned as error in this appeal prior to that date, the Commonwealth argues that it should not now be considered on appeal but only by way of collateral attack.

 Since July 1, 1985, a claim of ineffective assistance of counsel may be raised on direct appeal "if all matters relating to such issue are fully contained within the record of the trial." Code § 19.2-317.1. This legislative change creates no new substantive rights. It only determines when the claim may be asserted. It also assures the expeditious determination of this type of issue where, as in this case, the record is sufficient for the resolution of the issue. For these reasons, we conclude that this issue is properly addressed in this appeal even though the trial occurred prior to the effective date of Code § 19.2-317.1.

We conclude that the trial court erred in failing to conduct an inquiry to determine the extent and nature of the conflict of interest in this case. Therefore, the conviction must be vacated and the proceeding remanded for the trial court to determine if the defendant validly waived her right to independent counsel. If not, a new trial must be conducted.

*Vacated and remanded.*[3]

Duff, J., and Moon, J., concurred.

---

[3] Other issues raised by Dowell on this appeal have no precedential or public value, and, therefore, are considered and disposed of in an unpublished memorandum opinion filed with the clerk of this court from whom it is available upon request.