**Alexandria**

KEVIN MARSHALL PAYNE

v.

COMMONWEALTH OF VIRGINIA

No. 0209-86.

Decided February 2, 1988

COUNSEL

R. Dean Kidwell, for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Kevin Marshall Payne was convicted of statutory rape of a 12 year old child and sentenced by jury to fifteen years in the penitentiary. Payne contends that his conviction should be overturned because he was denied his right to effective assistance of counsel as guaranteed under the sixth and fourteenth amendments. We conclude that the record is insufficient for this matter to be raised on direct appeal.[1] Accordingly, we dismiss this appeal without prejudice.

Payne employed both the victim and the victim's mother as laborers in a lawn care business that Payne and his wife jointly owned. The Paynes were also friends with the victim's family and often socialized with them after work hours.

---

[1] Code § 19.2-317.1 provides as follows:
A claim of ineffective assistance of counsel may be raised on direct appeal if assigned as error and if all matters relating to such issue are fully contained within the record of the trial.

In opening argument, defense counsel proposed two theories that would support the defendant's innocence. He first proposed that the evidence would show that the Paynes had marital difficulties and that the victim's parents sided with Payne's wife. He stated the evidence would further show that the victim's parents encouraged the victim to fabricate the rape so that they and Payne's wife could take over the landscaping business. As an alternative theory, defense counsel proposed that the evidence would show that the victim fabricated the rape in response to an unrequited crush on Payne.

On the Commonwealth's direct examination, the victim testified that on June 21, 1985, while she was working for Payne cutting grass on a farm, he started kissing her and asked her if she wanted "to make a little." She then walked with Payne into the woods where he again kissed her and began to fondle her. He again asked her if she would like to "make a little." The victim at first was silent; however, upon Payne's third request she replied that she would. The two walked out of the woods into a field where Payne proceeded to have sexual intercourse with her. She testified that, at this time, she did not want the intercourse to happen. When the Commonwealth's attorney asked her why she did not run or tell Payne no, the victim replied, "Because I knew he could run faster than me." He then asked her if she feared Payne for any reason and she replied that she did "because I thought of him beating up his wife." Defense counsel made no objection. The victim did not tell her parents what had happened until several weeks later after they questioned her concerning a letter that she had written to a friend. The letter stated that she loved Payne and that she could not like the friend because she and Payne had "shared too many things."

The victim also testified that prior to the rape, Payne twice masturbated in her presence while he was sitting in the driver's seat of his car and she was sitting in the back seat. One incident occurred in a parking lot after the victim's father went into a restaurant for a few minutes. She testified that Payne said nothing to her while he masturbated. The other incident occurred while Payne's wife and a friend were making a call in a nearby phone booth. The victim testified that during this occasion Payne asked her if she wanted to make a little money on the side. Defense counsel raised no objection to this testimony.

On cross-examination, the victim testified that Payne masturbated in daylight on both occasions and that the incident at the restaurant took place as people were passing by. She also testified that after the rape, she fell in love with Payne and that she sometimes thought she and Payne would go off and live somewhere together. She revealed that she felt rejected by him.

The Commonwealth's attorney also called the victim's father as a witness and asked him, "Did there come a time when you and Payne ceased to be friends? Was there any particular incident that occurred at that time? What was that?" The victim's father answered "Yes. He assaulted me." The victim's father further testified that on June 30, 1985, while he and his family were taking Payne's wife to the hospital, Payne insisted that they put his wife out of the car. When the victim's father rolled the car window partially down, Payne struck him. Defense counsel made no objection at this time.

On cross-examination, defense counsel asked the victim's father, "What precipitated this altercation or argument or assault, however you wish to characterize it, of the night of June 30?" He responded, "Mr. Payne had beat his wife." He further testified that the beating took place on June 26 in the presence of the victim. Upon defense counsel's request, the victim's father described the nature of Payne's wife's injuries. He also stated that a few days after they had taken Payne's wife to the hospital for treatment of these injuries, she moved in with them.

On redirect examination, the Commonwealth's attorney asked the victim's father if he had ever discussed, prior to June 25, Payne beating his wife. He replied, "I overheard discussions. Not with me, no." The Commonwealth's attorney then asked, "But other people talking about it?" He answered, "Yes, sir." In response to the question, "What did he do to her on the 26th of June?," the victim's father described how Payne hit his wife across the nose and eyes with a telephone causing blood to run out of her nose. On recross-examination, defense counsel asked whether the injury could have been the result of an accident during a struggle for the phone. The victim's father replied, "Yes, I can determine that they struggled for it."

The Commonwealth's attorney also called the victim's mother as a witness and asked her if anything unusual had occurred on

June 26. She replied, "[Payne] and his wife were in an argument, and he took the telephone off the wall and smashed her in the face with it." Defense counsel made no objection. On cross-examination, the victim's mother admitted that she and Payne's wife were good friends.

In closing argument, the Commonwealth's attorney told the jury that Payne, when testifying, did not deny masturbating in the presence of the victim nor did he deny striking his wife in the presence of the victim. The Commonwealth's attorney described Payne's blow to his wife as being so hard "that blood ran down." The Commonwealth's attorney asked the jury to remember the victim's mother's testimony that she later found Payne's wife on the bed with her eyes rolled back in her head. In his rebuttal argument, the Commonwealth's attorney told the jury: "You may consider the character of the defendant, whether good or bad, along with the other facts and circumstances. He did not deny beating his wife, attacking [the victim's father], masturbating on two different occasions, all in the presence of this child. You may consider all that. . . ." Defense counsel made no objection to the Commonwealth's closing or rebuttal arguments.

Payne contends that the Commonwealth improperly established his bad character and proved other crimes by evidence of his assaults upon his wife and the victim's father and by evidence of masturbation. Payne asserts that this evidence created a manifest probability that his defense was prejudiced. *See Fleenor v. Commonwealth*, 200 Va. 270, 275, 105 S.E.2d 160, 163 (1958); *Zirkle v. Commonwealth*, 189 Va. 862, 871-76, 55 S.E.2d 24, 29-32 (1949). These arguments provide the foundation for the issue presented on this appeal - whether Payne's trial counsel provided effective assistance at trial. Payne points to his counsel's (i) failure to object to this testimony, (ii) failure to seek a ruling by the trial court on the admissibility of such evidence, (iii) failure to move for a mistrial after the introduction of the evidence, and (iv) cross-examinations that further elicited the inadmissible evidence. The Commonwealth contends that Payne's claim of ineffective counsel is not cognizable by direct appeal pursuant to Code § 19.2-317.1 because all matters relating to his claim are not fully contained in the record. We agree with the Commonwealth.

The Supreme Court of the United States has recognized that "the right to counsel is the right to the effective assistance of

counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). Our Supreme Court has adopted the *McMann/Strickland* standard as the rule in Virginia. *Stokes v. Warden*, 226 Va. 111, 115-17, 306 S.E.2d 882, 883-84 (1983); *see also Virginia Department of Corrections v. Clark*, 227 Va. 525, 533, 318 S.E.2d 399, 403 (1984).

■■■ In *Strickland*, the Court held that a claim of ineffective counsel must satisfy two elements for a conviction to be overturned. 466 U.S. at 687. First, the defendant must show that the counsel's performance was deficient to the degree that the committed errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show that counsel's errors prejudiced his defense to the extent that the defendant was deprived of a fair trial whose result was reliable. *Id.* A claim of ineffective counsel "is an attack on the fundamental fairness of the proceeding whose result is challenged." *Id.* at 697.

■■■ Counsel's performance is judged to be ineffective only if the defendant shows that it "fell below an objective standard of reasonableness." *Id.* at 687-88. We must determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Such a focus defies any attempt to evaluate counsel's performance by a set of strict guidelines. As the Court in *Strickland* noted:

> No particular set of detailed rules for counsels' conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause.

*Id.* at 688-89 (citation omitted).

As the Court further noted in *Strickland*, the defendant must overcome a strong presumption in favor of counsel to succeed in bringing a claim of ineffective assistance of counsel.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689 (citations omitted).

In the present case, the petitioner asks that we find his counsel's performance ineffective based on the record before us. Code § 19.2-317.1 allows us to entertain claims of ineffectiveness of counsel on direct appeal only if "all matters relating to such issue are fully contained within the record of the trial." As a general rule, a claim of ineffective assistance of counsel will not be considered unless that counsel has had an opportunity to defend himself on the record. *Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 362 (1987); *see also Beaver v. Commonwealth*, 232 Va. 521, 537, 352 S.E.2d 342, 351 (1987).

Trial counsel has not had that opportunity in this case; moreover, no other evidence in the record gives us a foundation upon which to evaluate any tactical or strategic reasons counsel may have had for his actions. Although in some cases this Court may be able to determine on direct appeal whether counsel's performance was ineffective by the trial record alone, we cannot determine on the record before us whether counsel's performance was below the standard of reasonableness or whether counsel's actions prejudiced the outcome of petitioner's trial. *Cf. Dowell v. Com-*

*monwealth*, 3 Va. App. 555, 561, 351 S.E.2d 915, 918 (1987) ("where a trial court fails to initiate an inquiry when it knows or reasonably should know that a . . . conflict [of interest in joint representation] may exist it is presumed that the conflict resulted in ineffective assistance of counsel").

Our examination of the nature of the conduct of which Payne complains leads us to conclude that a determination concerning the question of ineffectiveness can only be made after counsel has had an opportunity to explain the reasoning behind his actions. Code § 19.2-317.1 does not contemplate that a determination of trial counsel's ineffectiveness be made upon a partial record. For these reasons, we dismiss this appeal without prejudice.

*Dismissed.*

Duff, J., and Barrow, J., concurred.