Tony Albert **MACKALL**, Petitioner–Appellant,

v.

**Edward W. MURRAY, Director, Virginia Department of Corrections; Charles E. Thompson, Warden, Mecklenburg State Correctional Facility; Commonwealth of Virginia, Respondents–Appellees.**

No. 95–4018.

United States Court of Appeals,
Fourth Circuit.

Argued July 16, 1996.

Decided March 25, 1997.

Rehearing En Banc Granted; Opinion Vacated May 21, 1997.

Before MURNAGHAN and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed in part and reversed and remanded in part by published opinion. Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Senior Judge BUTZNER joined.

## OPINION

ERVIN, Circuit Judge:

Virginia death-row inmate Tony Albert Mackall petitioned the district court for a writ of habeas corpus, claiming among other things that his trial counsel had been ineffective. The district court held that Mackall had defaulted that issue by failing to raise it in his first state habeas petition. Mackall appeals, arguing that his representation in the first state habeas proceeding also was ineffective. Because state habeas corpus offered the first forum in which Mackall could challenge the effectiveness of his trial counsel, we hold that he was entitled to effective assistance of counsel in the first state habeas proceeding. Accordingly, if the district court finds on remand that Mackall's first state habeas counsel was ineffective, that finding will excuse his default.

### I

The facts underlying Mackall's conviction were summarized by the Virginia Supreme Court in its disposition of his original appeal. *See Mackall v. Commonwealth,* 236 Va. 240, 372 S.E.2d 759, 762–63 (1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3261, 106 L.Ed.2d 607 (1989). Mackall's arguments on this appeal are not fact-based, so we do not recount the facts in this opinion.

On December 18, 1987, Mackall was convicted in the Circuit Court of Prince William County, Virginia, of robbery, displaying a firearm in a threatening manner, and capital murder. He was sentenced to two years imprisonment for the firearm count, life for the robbery, and death for the murder. The Virginia Supreme Court affirmed, *id.,* 372 S.E.2d at 771, and the United States Supreme Court denied certiorari. *Mackall v.*

**ARGUED:** Donald Robert Lee, Virginia Capital Representation Resource Center, Richmond, VA, for Petitioner–Appellant. Pamela Anne Rumpz, Assistant Attorney General, Office of the Attorney General, Richmond, VA, for Respondents–Appellees. **ON BRIEF:** Joseph N. Bowman, Alexandria, VA, Mark Olive, Barbara L. Hartung, Virginia Capital Representation Resource Center, Richmond, VA, for Petitioner–Appellant. James S. Gilmore, III, Attorney General, Office of the Attorney General, Richmond, VA, for Respondents–Appellees.

*Virginia,* 492 U.S. 925, 109 S.Ct. 3261, 106 L.Ed.2d 607 (1989).

On March 13, 1989, Mackall filed in the Circuit Court a petition for a writ of habeas corpus. The court dismissed the petition on October 18, 1989, and Mackall did not appeal. Mackall filed the instant federal petition on October 10, 1991. In a supplement to the federal petition, filed on May 18, 1992, he raised for the first time several claims of ineffective assistance of counsel. Mackall filed a second state habeas petition on August 18, 1993, and the district court stayed the federal proceedings pending the state court's disposition.

The Circuit Court of Prince William County dismissed the second state petition on September 23, 1993, declaring:

> [T]he claims raised in the instant petition which were not raised in Mackall's prior habeas corpus petition are barred by Virginia Code § 8.01–654(B)(2).... [T]he claims in the instant petition that were raised in the prior petition are barred under *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974)[, *cert. denied sub nom., Parrigan v. Paderick,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975),] by Mackall's failure to appeal.

The Virginia Supreme Court denied Mackall's petition for appeal, and the United States Supreme Court again denied certiorari. 513 U.S. 904, 115 S.Ct. 268, 130 L.Ed.2d 186 (1994). The federal district court lifted its stay on November 17, 1994. It then denied Mackall's writ of habeas corpus and dismissed the action.

Mackall's appeal to this court consists of four primary points: (1) that a certificate of probable cause should be granted; (2) that his claim of ineffective assistance at trial was not defaulted due to his counsel's failure to raise it in his state habeas appeal, because his assistance in the state habeas proceedings also was ineffective; (3) that voir dire was constitutionally defective because Mackall was not allowed to ascertain the jurors' views on the death penalty; and (4) that the trial court improperly limited his introduction of mitigating evidence in the sentencing phase.

## II

The Commonwealth contends that Mackall's appeal fails under the recently enacted Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA" or "the Act"). The relevant portions of the Act modify the Judicial Code's habeas corpus provisions. They include revisions to parts of Chapter 153, codified at 28 U.S.C. §§ 2244, 2253–55; and a new Chapter 154, codified at 28 U.S.C. §§ 2261–66. The Act provides specifically that "[t]he ineffectiveness or incompetence of counsel during State or Federal post-conviction proceedings in a capital case shall not be a ground for relief." 28 U.S.C. § 2261(e); *accord* § 2254(i). Perhaps more importantly, it abrogates the independence with which federal courts have reviewed habeas corpus claims since *Brown v. Allen,* 344 U.S. 443, 458, 73 S.Ct. 397, 407–08, 97 L.Ed. 469 (1953). *See Bennett v. Angelone,* 92 F.3d 1336, 1341–42 (4th Cir.1996). The Act allows a federal court to address an issue not decided on its merits in state court only if the petitioner's failure to raise the issue in state court was:

> (1) the result of State action in violation of the Constitution or laws of the United States;

> (2) the result of the Supreme Court's recognition of a new Federal right that is made retroactively applicable; or

> (3) based on a factual predicate that could not have been discovered through the exercise of due diligence in time to present the claim for State or Federal post-conviction review.

28 U.S.C. § 2264. And if a state court did address an issue's merits, the Act permits federal habeas corpus review only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." *Id.* § 2254(d). Consequently, as a threshold matter, we must determine the Act's bearing on this appeal.

To ensure that the Act's tighter restrictions deny federal hearings only to defendants who had adequate habeas corpus proceedings at the state level, *see* H.R.Rep. No.

23, 104th Cong., 1st Sess.1995, 1995 WL 56412, 139 Cong. Rec. S15020–01, *15047, 1993 WL 451824 (Nov. 4, 1993) (statement of Sen. Specter); 139 Cong. Rec. S14940–02, *S14943, 1993 WL 448500 (Nov. 3, 1993) (statement of Sen. Hatch), Congress conditioned Chapter 154's application on appropriate state provisions for appointment of competent counsel:

(a) This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied.

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

28 U.S.C. § 2261(a)–(c).

Virginia contends that its existing standards satisfy the Act's "opt-in" provisions.

But the statute containing the Virginia standards, Va.Code § 19.2–163.8, did not become effective until July 1, 1992—nearly three years after Mackall's first state habeas petition was dismissed. See Bennett, supra, at 1342 ("Although the parties dispute whether Virginia's system satisfies [the Act]'s requirements, this dispute is irrelevant because, whatever the merits of the Virginia system, it was not set up until after Bennett's Virginia habeas petition had been finally denied by the Virginia Supreme Court."). Mackall filed his *second* petition after the statute was enacted, but the Virginia courts deemed all of its grounds defaulted by Mackall's failure to raise or appeal them in his first habeas proceeding. The merits of Mackall's state petitions, then, were never advocated by counsel appointed pursuant to Section 19.2–163.8.

■ To rule in Mackall's case that Section 19.2–163.8 satisfies the "opt-in" conditions would deny Mackall the very protection that Congress intended the "opt-in" provisions to ensure—representation by properly appointed counsel in at least one habeas corpus proceeding on the merits. Thus, without deciding whether the Virginia appointment procedures would satisfy the "opt-in" provisions in a case involving state proceedings initiated after 1992, we hold that Section 19.2–163.8 was enacted too late to impact Mackall. Mackall's federal petition, therefore, is not subject to Chapter 154's restrictions.

■ That conclusion does not end the inquiry. The failure of a state to "opt-in" preempts the application of Chapter 154 only; it does not affect the Act's amendments to Chapter 153. See Bennett, supra, at 1342–43. However, the AEDPA was not enacted until April 24, 1996, nearly six months after the district court disposed of Mackall's case and two days after he filed his opening brief in the Fourth Circuit. And, unlike Chapter 154, the amendments to Chapter 153 are not subject to a retroactivity clause. Cf. Pub.L. No. 104–132, § 107(c), 110 Stat. 1214, 1226 ("Chapter 154 ... shall apply to cases pending on or after the date of enactment of this Act."). Absent some indi-

cation that Congress intended the revisions to apply retroactively, *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 255–57, 114 S.Ct. 1483, 1492, 128 L.Ed.2d 229 (1994), we will not review the district court's disposition under standards that did not exist until after this appeal had divested the court of jurisdiction. *Cf. Warner v. United States*, 926 F.Supp. 1387, 1390 n. 4 (E.D.Ark.1996) (holding that, under *Landgraf*, presumption against retroactivity applies absent manifestation of congressional intent, particularly in light of express intent that Chapter 154 be retroactive). *But see Leavitt v. Arave*, 927 F.Supp. 394, 396 (D.Idaho 1996) (also citing *Landgraf*, but reaching opposite conclusion). Accordingly, we do not apply the portions of the Act amending Chapter 153.

## III

■ The Supreme Court has held that a certificate of probable cause may be granted a habeas corpus petitioner only upon a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (citations omitted). A habeas corpus petitioner makes a "substantial showing of the denial of a federal right" when he shows that (1) the questions he raises are "debatable among jurists of reason"; (2) a court could decide the issues differently; or (3) the "questions are adequate to deserve encouragement to proceed further." *Id.* n. 4 (citations omitted). Finding that Mackall has met this standard as to each of his three claims, we grant him a certificate of probable cause on each of them.

## A

Mackall contends that he received ineffective assistance at trial and in his first habeas corpus proceeding. He acknowledges that the constitution generally does not guarantee effective assistance in habeas appeals. *See Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) (holding that habeas petitioner is not entitled to representation); *Murray v. Giarratano*, 492 U.S. 1, 2, 109 S.Ct. 2765, 2766, 106 L.Ed.2d 1 (1989) (applying *Finley* rule in capital case); *Wainwright v. Torna*, 455 U.S.

586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982) (ruling that there can be no ineffective assistance claim where no right to counsel). He contends, however, that an exception to the general rule should be recognized when, as in this case, the constitutional violation of which a defendant complains was not directly appealable.

■ Virginia courts do not permit claims of ineffective trial counsel to be raised on direct appeal. *Goins v. Commonwealth*, 251 Va. 442, 470 S.E.2d 114, 124 n. 2 (1996); *Roach v. Commonwealth*, 251 Va. 324, 468 S.E.2d 98, 105 n. 4 (1996); *Walker v. Mitchell*, 224 Va. 568, 299 S.E.2d 698, 699–700 (1983). But both Mackall and the Commonwealth overlook a statutory exception that was operable at the time of Mackall's direct appeal. Virginia Code section 19.2–317.1, which was enacted in 1985, *see Dowell v. Commonwealth*, 3 Va.App. 555, 351 S.E.2d 915, 919 (1987), permitted defendants to raise ineffective assistance claims on direct appeal under certain circumstances:

> A claim of ineffective assistance of counsel may be raised on direct appeal if assigned as error and if all matters relating to such issue are fully contained within the record of the trial.

§ 19.2–317.1 (repealed 1990). When presented with claims of ineffective assistance, the Virginia Supreme Court routinely ruled that the claims were not directly appealable under the statute, because they could be resolved only by examining matters not "fully contained within the record of the trial." *E.g., Smith v. Commonwealth*, 239 Va. 243, 389 S.E.2d 871, 886 n. 5 (Va.), *cert. denied*, 498 U.S. 881, 111 S.Ct. 221, 112 L.Ed.2d 177 (1990); *Mu'Min v. Commonwealth*, 239 Va. 433, 389 S.E.2d 886, 898 (1990), *aff'd* 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *Paris v. Commonwealth*, 9 Va.App. 454, 389 S.E.2d 718, 720 n. 2 (1990); *Brown v. Commonwealth*, 8 Va.App. 126, 380 S.E.2d 8, 8 n. 1 (1989); *Hill v. Commonwealth*, 8 Va.App. 60, 379 S.E.2d 134, 139 (1989); *Hoke v. Commonwealth*, 237 Va. 303, 377 S.E.2d 595, 605 n. 4 (Va.), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989), *cert. denied*, 502 U.S. 880 (1991); *Grogg v. Commonwealth*, 6 Va.App. 598, 371 S.E.2d 549, 550 n.

1 (1988); *Payne v. Commonwealth*, 5 Va. App. 498, 364 S.E.2d 765, 768–69 (1988); *Payne v. Commonwealth*, 233 Va. 460, 357 S.E.2d 500, 509 (Va.), *cert. denied*, 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987); *Beaver v. Commonwealth*, 232 Va. 521, 352 S.E.2d 342, 351–52 (Va.), *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); *Correll v. Commonwealth*, 232 Va. 454, 352 S.E.2d 352, 361 & n. 6 (Va.), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987); *Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267, 287 (1986). The court allowed a direct appeal only once, when the basis of the claim was not the trial attorney's performance, but a conflict of interest arising from his representation of two codefendants who testified against the appellant. *Dowell*, 351 S.E.2d at 919. Apparently because of its general inapplicability, the statute was repealed in 1990. *See Browning v. Commonwealth*, 19 Va.App. 295, 452 S.E.2d 360, 362 n. 2 (1994).

■ Mackall's ineffective-assistance argument is based entirely on his trial counsel's tactics. He challenges his attorney's failure to challenge a witness's identification of Mackall, failure to cross-examine the identifying witness, failure to point out another witness's statement that the perpetrator wore a mask, failure to object to allegedly irrelevant testimony, failure to cross-examine a jailhouse informant, failure to object to the prosecutor's summation, and failure to object to testimony beyond the scope of an expert witness's expertise. All of these grounds are performance-based—the type that, the Virginia Supreme Court uniformly ruled, is outside the scope of section 19.2–317.1. Consequently, Mackall's claim of ineffective assistance was not directly appealable.

In *Coleman v. Thompson*, another capital case that arose in Virginia, the petitioner asserted that the ineffectiveness of his state habeas *appellate* counsel constituted cause to excuse the procedural default of his ineffective trial-counsel claim. 501 U.S. 722, 755, 111 S.Ct. 2546, 2567–68, 115 L.Ed.2d 640 (1991). The Supreme Court disagreed. Citing the federalist principle of deference to state judgments, *id.* at 726, 111 S.Ct. at 2552,

it reiterated its earlier holding in *Murray v. Carrier* that,

> [s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . ., we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

*Id.* at 752, 111 S.Ct. at 2566 (quoting *Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986)). Coleman had no constitutional right to any representation in his state habeas appeal, the Court held, so his counsel on that appeal could not have been constitutionally ineffective. *Id.* at 755–57, 111 S.Ct. at 2567–69.

*Coleman* does not resolve the question in this case. The Court expressly relied on the fact that Coleman's claim had been advocated effectively in one forum—the state habeas trial—so it left open the question posed by Mackall:

> *Finley* and *Giarratano* established that there is no right to counsel in state collateral proceedings. For Coleman to prevail, therefore, there must be an exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction. *We need not answer this question broadly, however, for one state court has addressed Coleman's claims: the state habeas trial court.* The effectiveness of Coleman's counsel before that court is not at issue here. Coleman contends that it was the ineffectiveness of his counsel during the appeal from that determination that constitutes cause to excuse his default. *We thus need to decide only whether Coleman had a constitutional right to counsel on appeal from the state habeas trial court judgment .* We conclude that he did not.

*Id.* at 755, 111 S.Ct. at 2567–68 (emphasis added).

■ The Supreme Court long has recognized a constitutional right to counsel in a defendant's first appeal as of right. *Douglas v. California*, 372 U.S. 353, 356–57, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963). There is a strong argument to be made that, with respect to any issues not directly appealable,

that right extends to representation in the state habeas trial court. *Cf. Coleman,* 501 U.S. at 756, 111 S.Ct. at 2568 ("Coleman has had his 'one and only appeal,' if that is what a state collateral proceeding may be considered."). But the question in this case is even narrower. The effectiveness of trial counsel, by its very nature, generally cannot be challenged in the original trial court. Thus, unlike other constitutional issues such as *Miranda* violations, unreasonable searches, double jeopardy, et cetera, ineffective assistance of counsel can be raised *only* on direct or collateral appeal. To decide that a defendant claiming ineffective trial counsel is not entitled to representation in his first habeas corpus proceeding, in a state that does not allow trial counsel's effectiveness to be challenged on direct appeal, would be to conclude that the defendant is not entitled *in any forum* to an attorney's assistance in presenting a fundamental constitutional claim. We will not so hold. Accordingly, Mackall is entitled to a hearing to determine whether the evidence of his first habeas counsel's ineffectiveness constitutes a "substantial showing of the denial of a federal right."

**B**

Next, Mackall argues that the trial court erred by refusing to ask the jurors whether or not they held opinions on the death penalty and, if so, what their opinions were.[1] He bases his argument in part on *Wainwright v. Witt,* in which the Supreme Court stated the standard for excluding jurors for cause based on their views about capital punishment: "That standard is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (internal quotation omitted). Mackall also relies heavily on *Morgan v. Illinois,* in which the Court ruled that a capital defendant is entitled to ask jurors

whether, if they were to find a defendant guilty, they would "automatically vote to impose the death penalty no matter what the facts [we]re." 504 U.S. 719, 723, 735–36, 112 S.Ct. 2222, 2226, 2233–34, 119 L.Ed.2d 492 (1992).

■ We do not infer from *Wainwright* and *Morgan* a requirement that trial courts allow inquiries into jurors' views on the death penalty. Those decisions focus not on whether the jurors have opinions, or what those opinions are, but on whether the opinions the jurors hold, whatever they are, will inhibit their ability to follow the law. The trial judge in this case asked the jurors the following questions about the application of the death penalty:

(1) Do you have any opinion such as to prevent any of you from convicting anyone of an offense punishable with death?

(2) If you were to find the defendant guilty of capital murder, is there any juror who could never vote to impose the death penalty or would refuse to even consider its imposition in this case?

(3) If you were to sit as a juror in this case and the jury were to convict the defendant of capital murder, would you also be able to consider voting for a sentence less than death?

Those questions properly addressed the central question of *Wainwright* and *Morgan*—whether jurors can follow the law. Thus the trial judge did not abuse his discretion by refusing to ask the jurors what their opinions were.

**C**

Finally, Mackall contends that the trial court erred by excluding certain mitigating evidence—of prior drug use, hallucinations, and efforts to reform—and by limiting evi-

---

1. We need not resolve the voir dire question to reverse on the ineffective assistance ground. If we were not to resolve it, however, it probably would arise again regardless of the district court's verdict in the evidentiary hearing. Were the district court to find that Mackall's state trial representation was constitutionally defective, and

order a new trial, Mackall might propose again the questions that are contested here. And, were the district court to rule against Mackall on the ineffective assistance issue, Mackall likely would file another appeal on the voir dire question. For judicial economy, therefore, we address it now.

dence of intelligence deficiency.[2] He relies on *Lockett v. Ohio*, in which the Supreme Court held that

> the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). The Commonwealth contends that Mackall defaulted these arguments because, although he challenged the trial court's refusal to admit the evidence in Virginia courts and in the district court, he did not cite *Lockett* or the U.S. Constitution until this appeal. Mackall responds, however, that he relied below on Virginia Code § 19.2–264.4(B), which requires admission, "subject to the rules of evidence," of "any ... facts in mitigation of the offense." That statute, he argues, was enacted to implement the dictates of *Lockett* and other constitutional principles, *see Smith v. Commonwealth*, 219 Va. 455, 248 S.E.2d 135, 149 & n. 6 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). Therefore, he concludes, his argument of the factual basis for his claim, and his citation of authority derived from *Lockett* and other constitutional precedents, were sufficient to preserve the constitutional issues.

Both parties treated this issue as minor. They devoted to it only a small portion of their briefs, and neither even mentioned it at oral argument. More important than the volume of their discussions, both Mackall and the Commonwealth neglected the Supreme Court's development of the *Lockett* doctrine in the eighteen years since the original decision, and the uncertainty that remains regarding the interplay of constitutional principles and state rules of evidence. *Compare, e.g., Green v. Georgia*, 442 U.S. 95, 97, 99

S.Ct. 2150, 2151, 60 L.Ed.2d 738 ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment."), *with Romano v. Oklahoma*, 512 U.S. 1, 12, 114 S.Ct. 2004, 2011, 129 L.Ed.2d 1 (1994) ("The Eighth Amendment does not establish a federal code of evidence to supersede state evidentiary rules in capital sentencing proceedings."). Finally, the insufficiency of the parties' attention is compounded by the absence of any consideration by the district court of the constitutional question. Consequently, we remand the issue to the district court for more thorough development in light of its ruling on the effectiveness of Mackall's representation.

### IV

We reject Mackall's contentions that the state trial court erred in asking the questions about the application of the death penalty discussed in Part III B above. However, we remand for an evidentiary hearing on the effectiveness of Mackall's original state habeas counsel, and for more thorough development of the mitigative evidence question.

*AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.*

---

**2.** The mitigation question also is likely to arise again. Were Mackall granted a new trial based on his ineffective assistance claim, and convicted again, he might seek to introduce in the sentencing phase the same mitigative testimony that the original trial judge excluded. And, if the district court were to find that Mackall's representation was effective, Mackall might appeal once again to this court on the mitigation question. Nevertheless, for the reasons that follow, we elect not to address it.