COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia

LEWAYNE SHAWNTA JOHNSON, S/K/A
  LEWAYNE SHAUNTA JOHNSON
                                                              OPINION BY
v.            Record No. 1146-06-3            JUDGE D. ARTHUR KELSEY
                                                          NOVEMBER 6, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

        J. Patterson Rogers, 3rd, for appellant.

        Eugene Murphy, Senior Assistant Attorney General
        (Robert F. McDonnell, Attorney General, on brief), for
        appellee.


        A jury convicted LeWayne Shawnta Johnson of aggravated malicious wounding and use of

a firearm in the commission of a felony.  His convictions should be overturned, Johnson argues,

because the trial court erroneously disqualified his attorney prior to trial and appointed substitute

counsel to defend him at trial.  We disagree and affirm Johnson's convictions.

                                                    I.

        Early one morning, Chonece Coleman witnessed a fight between Johnson and Edward

Green.  It appeared to Coleman and to other observers that Green had gotten the better of Johnson

during the brawl.  Later that morning, Johnson approached Green with a handgun and shot him

three times.  Green survived and identified Johnson as the shooter.  Johnson was arrested for the

crime and hired Joe Garrett, Esq., to represent him in court.  Meanwhile, Coleman was arrested on

unrelated drug charges.  He too hired Garrett to defend him in court.

        Prior to trial in Johnson's case, the Commonwealth moved to disqualify Garrett from

representing Johnson.  Based on a written statement Coleman had given to police investigators, the

prosecutor said he intended to call Coleman to the witness stand to testify against Johnson. Coleman was a "key witness for the Commonwealth," the prosecutor asserted, and Coleman's testimony (if consistent with his written statement) would be adverse to Johnson.

In response, Garrett admitted he represented Coleman on pending, unrelated drug charges. Garrett also acknowledged that Coleman was a friend of Green, the alleged victim in Johnson's case, and that Coleman's testimony would likely be "adverse to Mr. Johnson and consistent with the Commonwealth's case." Garrett nevertheless argued, "I cannot disqualify myself in every case in which a past client or, you know, a current client is a witness and I don't think there's any ethical or legal requirement that I do so." Consistent with this view, Garrett advised Coleman and Johnson of his joint representation and secured unqualified waivers of any potential conflict from both.

The trial court disqualified Garrett from representing Johnson. To rule otherwise, the trial court reasoned, might place Garrett in a position where he would be "discrediting one client's testimony in order to protect another client." Substitute counsel appeared at trial to defend Johnson. Coleman took the stand and testified about the fight he observed between Johnson and Green. Johnson's trial counsel cross-examined Coleman seeking to impeach his credibility. In closing argument, the prosecutor asserted Johnson shot Green in retaliation for "[g]etting beat up in front of his friends" — a motive supported in part by the testimony of Coleman as well as other witnesses.

II.

On appeal, Johnson claims the trial court violated his Sixth Amendment right to counsel by disqualifying Garrett from representing him at trial. Citing United States v. Gonzalez-Lopez, 126 S. Ct. 2557 (2006), Johnson argues that his right to retained counsel should be deemed a "structural right" subject to few limitations. While acknowledging that an actual, unwaived conflict of interest would authorize a trial court to reject a criminal defendant's counsel of choice, Johnson contends a

mere *potential* conflict of interest, even a serious one, can never be an adequate basis for disqualification if the clients knowingly waive the potential conflict. We disagree.

To begin with, we accept that a violation of the Sixth Amendment right to retained counsel qualifies as a "structural defect," a proposition recently recognized by <u>Gonzalez-Lopez</u>, 126 S. Ct. at 2564. The structural quality of the error, however, tells us nothing about the scope of the right or any constitutionally permissible limitation that may circumscribe it. The "structural" adjective merely denotes that the *violation* of the right cannot be subjected to the harmless error doctrine on appeal. <u>Id.</u> Whether the right has been violated in the first place is not affected by the structural classification of the alleged violation. A constitutional defect, in other words, must first be shown to exist before its structural or nonstructural qualities become relevant.

Writing for the majority, Justice Scalia in <u>Gonzalez-Lopez</u> emphasized this distinction: "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them." <u>Id.</u> at 2565. One of those "previous holdings" was <u>Wheat v. United States</u>, 486 U.S. 153 (1988), which "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness" and protected the judiciary's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." <u>Gonzalez-Lopez</u>, 126 S. Ct. at 2565-66 (citing <u>Wheat</u>, 486 U.S. at 160, 163-64). "None of these limitations on the right to choose one's counsel is relevant here," <u>Gonzalez-Lopez</u> made clear. <u>Id.</u> at 2566.

Our analysis thus begins not with <u>Gonzalez-Lopez</u> but with <u>Wheat</u>, which explained that the "Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." <u>Wheat</u>, 486 U.S. at 159. This limitation stems from the "essential aim" of the Sixth Amendment right to retained counsel, which is "to guarantee an effective advocate for each criminal

defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. That is particularly true where, as here, conflict-of-interest concerns intersect the Sixth Amendment debate. Trial courts "face the prospect of being 'whipsawed' by assertions of error no matter which way they rule," id. at 161 — accused on direct appeal of depriving a defendant of his Sixth Amendment right to retained counsel (if the court disqualifies counsel) or challenged on collateral habeas review of violating the defendant's Sixth Amendment right to effective assistance of counsel (if the court refuses to disqualify counsel). See United States v. Williams, 81 F.3d 1321, 1324 (4th Cir. 1996) (holding that a trial court "must have sufficiently broad discretion to rule without fear" of being reversed by either pull of the whipsaw).

Given these competing constitutional concerns, trial courts "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a *potential for conflict exists* which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163 (emphasis added). This standard gives trial courts "broad latitude" because the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Id. at 162-63. It necessarily follows that the trial court has a unique "obligation to foresee problems over representation that might arise at trial and head them off beforehand." United States v. Howard, 115 F.3d 1151, 1155 (4th Cir. 1997) (affirming disqualification of counsel based upon a potential conflict of interest).

Appellate courts must rely heavily on a trial court's "instinct and judgment based on experience in making its decision." Wheat, 486 U.S. at 163. It should be no surprise, then, that different trial courts faced with the similar circumstances could reach "opposite conclusions with equal justification, but that does not mean that one conclusion was 'right' and the other 'wrong.'" Id. at 164. "The evaluation of the facts and circumstances of each case under this standard,"

- 4 -

therefore, "must be left primarily to the informed judgment of the trial court." Id. When reasonable jurists could disagree, the trial court's ruling should stand on appeal.

Employing this standard, we find no abuse of discretion in the trial court's decision to disqualify Garrett from representing Johnson at trial. Garrett acknowledged his existing attorney-client relationship with Coleman, Coleman's friendship with Johnson's alleged victim, and Coleman's likely adverse testimony. At trial, Garrett would have found himself in an intractable dilemma: either he could vigorously cross-examine Coleman in an effort to discredit Coleman's sworn testimony, or he could weaken the intensity of cross-examination (perhaps even abandon the effort altogether) out of a desire to protect Coleman.

Exercising the kind of experienced instinct and judgment Wheat commends, the trial court understandably concluded a serious potential (if not an outright actual) conflict of interest infected Garrett's continued representation of Johnson. See generally 3 Wayne R. LaFave, Criminal Procedure § 11.9(a), at 652 (2d ed. 1999) (recognizing a potential conflict when defense counsel "is currently representing, in another matter, either the victim of the crime or a prosecution witness"); see, e.g., United States v. Stewart, 185 F.3d 112, 121 (3d Cir. 1999) (noting the possibility of a conflict when counsel also represents a "government witness" (quoting United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991)); United States v. Bradford, 121 F. Supp. 2d 454, 456 (W.D. Pa. 2000).

Johnson finds fault with this analysis, claiming it fails to give full effect to his waiver of any conflict of interest. We disagree that Johnson's conflict waiver precluded the trial court from exercising its disqualification discretion. The Sixth Amendment does not "demand that a court honor his waiver of conflict-free representation." Gonzalez-Lopez, 126 S. Ct. at 2565-66 (citing Wheat, 486 U.S. at 159-60). Whether waived or not, actual as well as serious potential conflicts of interest still implicate the judiciary's "independent interest in ensuring that criminal trials are

conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. This institutional interest in the appearance, as well as the reality, of propriety cannot be vitiated merely by a client's waiver. Id.

Finally, Johnson claims our analysis does not take into account his belief that Coleman's testimony at trial was not "essentially damaging" to his defense and, at any rate, was "merely cumulative" at best. See Appellant's Br. at 14. We need not agree or disagree with this characterization, however, to reject it. When the issue is raised pretrial, the trial court "must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly." Wheat, 486 U.S. at 162.

To be sure, "[i]t is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand." Id. at 163. For the same reason, trial courts must be given broad pretrial latitude to address nascent conflicts of interest before they reach the point where they damage the institutional integrity of the trial and inflict actual prejudice on the defendant's right of effective, undivided advocacy. Consequently, we judge the trial court's ruling in light of the circumstances facing it at the time of the pretrial decision to disqualify, not through the lens of hindsight after the trial has come to a close.[1]

---

[1] On brief, Johnson contends the trial court should have conducted a further evidentiary inquiry on the nature of the alleged conflict and also erred in appointing substitute counsel without first permitting him the opportunity to hire his own counsel. Because Johnson made neither argument in the trial court, we will not address them for the first time on appeal. "As a precondition to appellate review, Rule 5A:18 requires a contemporaneous objection in the trial court to preserve the issue on appeal. Not just any objection will do. It must be both specific and timely — so that the trial judge would know the particular point being made in time to do something about it." Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742 (emphasis in original), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

III.

Because the trial court did not abuse its discretion in disqualifying Garrett from representing Johnson at trial, we affirm Johnson's convictions for aggravated malicious wounding and use of a firearm during the commission of a felony.

Affirmed.