COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Petty
Argued at Salem, Virginia

WESLEY EUGENE BAKER, II

                                                   MEMORANDUM OPINION[*] BY
v.        Record No. 2611-07-3                   JUDGE WILLIAM G. PETTY
                                                      FEBRUARY 17, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

Keith Orgera, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


        The trial court convicted Wesley Eugene Baker, II, of four counts of forgery in violation of

Code § 18.2-172, and one count of obtaining money by false pretense in violation of Code

§ 18.2-178.  Baker appeals these convictions, arguing that the trial court erred by (1) denying his

request to remove his attorney due to a conflict of interest, and (2) admitting evidence over his

objection.  For the reasons explained below, we disagree with Baker and affirm his convictions.

        Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

Upon familiar principles, we view those facts and incidents on appeal in the light most favorable to

the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Bailey

v. Commonwealth, 38 Va. App. 794, 797, 568 S.E.2d 440, 442 (2002).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

First, Baker argues that the trial court erred in denying his request to remove his attorney because of a conflict of interest. We review the trial court's determination to inquire into an asserted conflict of interest for abuse of discretion. See Johnson v. Commonwealth, 50 Va. App. 600, 606, 652 S.E.2d 156, 159 (2007). Baker contends that the trial court had a duty to determine whether an actual conflict of interest existed when he informed the court that he had written a letter to the Virgnia Bar Association complaining about his attorney. We hold that the trial court had no duty to conduct an inquiry into the asserted conflict of interest on these facts.

Immediately prior to trial, the court denied Baker's motions to suppress evidence and exclude evidence by a handwriting analysis expert from the state forensic laboratory. Baker then asked the trial court to continue his case so he could be tried by a jury, but the court denied that motion noting that Baker had signed a written jury trial waiver some six months earlier.[1] During the pretrial colloquy, Baker stated that he was not satisfied with his lawyer's services. He explained he was so dissatisfied with his lawyer's services that he had written a letter to the "Virginia Bar Association"[2] (the VBA letter) two weeks prior to trial. When the trial court asked why Baker was dissatisfied with his attorney, Baker stated that he had not met with counsel in person before trial. Baker also felt that he had not had time to prepare for trial because he received copies of motions

---

[1] As we have long noted, "a last minute request for a jury trial may cause hardships and scheduling difficulties, but we . . . believe that it is not a problem without a solution." Wright v. Commonwealth, 4 Va. App. 303, 309, 357 S.E.2d 547, 551 (1987). Here, the trial court employed an effective solution by obtaining a waiver of jury trial from the defendant well in advance of the actual trial date.

[2] We note that Baker sent his complaint to the "Virginia Bar Association," rather than the Virginia State Bar, the agency charged with investigating allegations of attorney misconduct. See Code § 54.1-3909 and Rule 6, § 1 ("[T]he Virginia State Bar, as the Administrative agency of the Supreme Court of Virginia, carries forward the responsibility for the discipline of lawyers and the investigation of persons practicing law in the Commonwealth without proper authority.").

only a week before trial. The trial court asked Baker "[w]hat preparation was needed other than what's been done . . . ?" Baker replied that he felt the pretrial motions were not filed in a timely manner because he did not "even [get] a chance to look at the discovery stuff a week before trial[.]"

The trial court then asked Baker's attorney, Colin Drabert, whether he had opportunity to confer with Baker. Drabert explained that Baker had been held "near Charlottesville" and that they had discussed his case over the telephone. Drabert stated he had received a letter from Baker requesting that he make certain pretrial motions and that he had responded to the letter approximately two weeks before trial "with all the information that [Baker] requested." Drabert also stated that he had been to the Commonwealth Attorney's office twice to review Baker's file under the Commonwealth's open file policy. In his answer to the trial court's inquiry, Drabert also stated that he was ready to proceed with the trial, explaining, "if Mr. Baker is unhappy with me . . . he has a right to be so, Your Honor, but I believe I could try the case today." Drabert also indicated that he had not recieved a copy of the VBA letter.

Based on this discussion, the trial court determined that Drabert was competent, had "ably represented" Baker, had "presented motions . . . above and beyond the call of duty," and had adequately prepared for trial. The trial court declined to replace Drabert or continue the case.

When "the possibility of a conflict of interest is apparent, a trial court has a duty to conduct further inquiry to determine if an actual conflict exists." Dowell v. Commonwealth, 3 Va. App. 555, 559, 351 S.E.2d 915, 917 (1987); see also Wood v. Georgia, 450 U.S. 261, 272 (1981). However, "[t]he mere possibility of a conflict of interest, which is not apparent or to which no objection is made, prompts no need for a trial court to conduct further inquiry." Dowell, 3 Va. App. at 559, 351 S.E.2d at 917.

We have previously addressed what types of situations create apparent conflicts of interest. Apparent conflicts of interest typically arise in the context of multiple representations. See, e.g., id.

- 3 -

at 555, 351 S.E.2d at 915 (holding that appellant did not receive the effective assistance of counsel when her attorney also represented her two codefendants who testified against her at trial); accord Johnson, 50 Va. App. 600, 652 S.E.2d 156 (concluding that the trial court had correctly disqualified defense counsel prior to trial when counsel also represented a key Commonwealth's witness on unrelated drug charges). However, apparent conflicts of interest can also arise in other situations in which a "defendant shows that his counsel actively represented actual conflicting interests that adversely affected his counsel's performance . . . ." Carter v. Commonwealth, 11 Va. App. 569, 574, 400 S.E.2d 540, 543 (1991) (citations omitted) (vacating conviction and remanding when trial court failed to "conduct an inquiry to determine the extent and effect of an alleged conflict of interest raised in defense counsel's motion to withdraw" when the Commonwealth accused the defense of unethical behavior).

These facts in this case stand in sharp contrast with those in Carter, 11 Va. App. at 569, 400 S.E.2d at 540. In Carter, we vacated and remanded for a new trial because of an uninvestigated apparent conflict of interest. Id. We concluded that an apparent conflict of interest existed in Carter because the trial court denied the defense attorneys' motion to withdraw after the Commonwealth threatened to file a Bar complaint against them for alleged witness tampering in a criminal trial. Id. at 571-72, 400 S.E.2d at 541-42. We concluded that an apparent conflict of interest existed based on the following facts:

> [The defense attorneys] were required to conduct an effective defense of the accused in an atmosphere where a potential defense witness possibly had been compromised, where the prosecutor had made allegations of misconduct and still held open the possibility of bringing ethical charges, and where the trial judge declared in open court that the prosecutor had the discretion to bring those charges.

Id. at 574, 400 S.E.2d at 543. The situation we described in Carter obviously would have affected the attorneys' ability to zealously represent their client.

- 4 -

Here, Baker merely notified the trial court that he wanted a new lawyer and that he was unsatisfied with his lawyer's performance. To illustrate the level of his frustration with his attorney, he stated he had written a letter about his lawyer to the Virginia Bar Association. Based on Baker's assertions, the trial court inquired into defense counsel's communication with Baker and preparation for the case. After making its inquiries, the trial court noted that Drabert had adequately conferred with Baker and had appropriately prepared for trial by reviewing the Commonwealth's file and filing appropriate pretrial motions. Further, the trial court gave Baker's attorney an opportunity to make the court aware of any difficulties he had in representing Baker. The record also shows that Drabert had not received a copy of Baker's letter to the Virginia Bar Association, and there is nothing in the record revealing the contents of the letter or whether the Virginia Bar Association took any action on it. Drabert acknowledged Baker's frustration, but assured the court that he was "ready to try the case." At no time did Baker or his attorney suggest that any conflict of interest existed.

The facts before us do not rise to the level of an apparent and obvious conflict of interest. Moreover, in light of all the circumstances of the case, including the immediately preceding motions to continue the case on other grounds and defense counsel's assurances to the trial court, the trial court could have reasonably concluded that Baker's complaints were aimed at obtaining a new lawyer in order to delay his trial. See, e.g., Johnson v. Commonwealth, 51 Va. App. 369, 657 S.E.2d 812 (2008) (holding that the trial court did not err by refusing to allow a continuance and substitution of counsel on the day trial was scheduled when five previous continuances had been allowed).

We reject Baker's argument that the mere allegation that a criminal defendant's writing a letter to the Virginia Bar Association creates an apparent conflict of interest. Instead, in the absence of specific facts indicating an apparent and obvious conflict of interest, we rely upon the

trial court's "instinct and judgment based on experience in making its decision." Wheat v. United States, 486 U.S. 153, 163 (1988). Accordingly, we conclude that the trial court did not abuse its discretion when it refused to conduct further inquiry into defense counsel's alleged conflict of interest.

II.

Second, Baker argues that the trial court erred in admitting evidence over his objections. Baker argued at trial that Commonwealth's Exhibits 1, 2, 3, 4B, and 4C were not properly authenticated as business records and were therefore inadmissible.[3] "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). We conclude that the trial court did not abuse its discretion when it admitted these exhibits into evidence because they were properly authenticated.

At trial, Edward Williams testified that he lost his wallet in August 2006. His wallet contained his Social Security card, birth certificate, and driver's license. Shortly after losing his wallet, Williams received telephone calls from Rent-A-Center, Colortyme Rental, Aaron's Rental, and Friedman Jewelers advising him that his credit applications had been approved. Williams had not, however, applied for credit at those stores. Accordingly, he was afraid that "somebody was using [his] identity information" to obtain credit.

---

[3] These documents were:

  1. Rent-A-Center delivery checklist, lease purchase agreement, and rental order (Exhibit 1);
  2. Colortyme rental order and rental purchase agreement (Exhibit 2);
  3. Aaron's lease order form (Exhibit 3);
  4. Friedman Jewelers credit application (Exhibit 4B); and
  5. Friedman Jewelers loan contract (Exhibit 4C).

The assistant Commonwealth's attorney then showed Williams documents from each store, and Williams testified that the signature on each document was not his and that he had not attempted to purchase anything at the stores during the pertinent time. He also denied knowing Baker and testified that he had never given Baker permission to sign his name. The Commonwealth called employees from each store to authenticate the documents. On appeal, Baker argues that the documents were not adequately authenticated.

A. Rent-A-Center[4]

Baker posits that the Rent-A-Center agreement was hearsay that did not meet the requirements for the business record exception, and was therefore inadmissible. Specifically, Baker argues that the agreement was not properly authenticated because the Commonwealth's witness, John Berger, was not a proper custodian of the record. Thus, Baker reasons, the Commonwealth did not establish that the document met the requirements of the business record exception and the trial court erred by admitting it. We disagree.

The Commonwealth relied on the testimony of John Berger, the manager at the Rent-A-Center store at the relevant time, to authenticate the document. Mr. Berger identified the document as being a Rent-A-Center record, and also recognized Baker as a customer who was inside the Rent-A-Center store on August 28, 2006, the date the agreement was signed. Mr. Berger did not, however, remember seeing Baker actually sign the lease purchase agreement.

It is well settled that "Virginia follows the modern 'shopbook' rule or business records exception to the hearsay rule, which allows introduction 'into evidence of verified regular [business] entries without requiring proof from the original observers or record keepers.'" Sparks v.

---

[4] For the purposes of this opinion, we assume, without deciding, that the Rent-A-Center agreement was hearsay when offered to prove that Baker signed it. The Commonwealth concedes this point on brief. Cf. Hamm v. Commonwealth, 16 Va. App. 150, 155-56, 428 S.E.2d 517, 521 (1993).

Commonwealth, 24 Va. App. 279, 282, 482 S.E.2d 69, 71 (1997). Because the trustworthiness of documents admitted under the business record exception arises from their nature as records kept in the normal course of business, "Automatic" Sprinkler Corp. v. Coley & Patterson, Inc., 219 Va. 781, 792, 250 S.E.2d 765, 773 (1979), these documents must be "'verified by testimony of the [entrant of the record] or of a superior who testifies to the regular course of business,'" Sparks, 24 Va. App. at 282, 482 S.E.2d at 71 (alteration in original) (quoting Ford Motor Co. v. Phelps, 239 Va. 272, 276, 389 S.E.2d 454, 457 (1990)).

Here, the witness identified himself as the manager of the Rent-A-Center store at the relevant time. He was therefore in a position to know whether the document was an authentic Rent-A-Center document. The witness verified that the exhibit consisted of authentic Rent-A-Center documents. Accordingly, the trial court did not abuse its discretion when it admitted the exhibit.

## B. Other Documents

Commonwealth's Exhibits 2, 3, 4B, and 4C were also properly authenticated. Initially, we note that these documents were not hearsay. Our Supreme Court has long-defined hearsay evidence as:

> [T]estimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.

Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting McCormick on Evidence § 246, at 584 (2d ed. 1972)). The evidentiary value of these documents does not rest "upon the credibility of [an] out-of-court asserter." Id. Instead, the individuals called to authenticate the documents were present at their respective workplaces at the relevant time and saw Baker sign the documents in question. Accordingly, the hearsay rule is not implicated in this case.

However, regardless of its hearsay or non-hearsay character, it is axiomatic that a document must be authenticated, or shown to be genuine, before it can be admitted into evidence. Proctor v. Commonwealth, 14 Va. App. 937, 938, 419 S.E.2d 867, 868 (1992). The proponent of the document needs to supply "an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed." Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 841 (1982). A document may be authenticated by circumstantial evidence. Bain v. Commonwealth, 215 Va. 89, 91, 205 S.E.2d 641, 643 (1974). "The amount of evidence sufficient to establish authenticity will vary according to the type of writing and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice." Walters, 223 Va. at 451, 290 S.E.2d at 842.

Here, the Commonwealth presented direct evidence as to the documents' authenticity in the form of "witnesses testifying as to the origin or execution of [the] document[s]." Jackson v. Commonwealth, 13 Va. App. 599, 602, 413 S.E.2d 662, 665 (1992). Monique Payne, a Colortyme employee, identified Baker as the individual who signed the rental purchase agreement (Commonwealth's Exhibit 2) on August 28, 2006, which she then countersigned as a witness. Marjorie Purcell Maddox, a clerk at Aaron's Rental, identified Baker as a customer in the store on August 28, 2006. She testified that she watched Baker walk to a table, write, and then bring a lease order form (Commonwealth's Exhibit 3) to her, signed "Edward J. Williams." April Sullivan, the manager at Friedman Jewelers, testified that Baker was a customer in the store on August 31, 2006. On that date, she saw Baker sign Williams' name on a credit application and loan contract (Commonwealth's Exhibits 4B and 4C).

The witnesses were employees of the respective stores at the relevant time, and the witnesses actually saw or took part in the execution of the documents in question. "[O]ne who

has actually observed the execution of the document . . . may, by his or her testimony, provide the strongest possible evidence of authenticity."  Charles E. Friend, The Law of Evidence in Virginia § 15-1 (6th ed. 2003).  Accordingly, the Commonwealth presented an adequate basis from which the trial court could determine that each document was "what its proponent claims it to be."  Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990).

III.

For the reasons stated above, we affirm Baker's convictions.

Affirmed.