COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Senior Judges Annunziata, Clements and Haley

DEVRICK RAQUAN GAIL

                                                    MEMORANDUM OPINION*
v.        Record No. 1327-21-2                      PER CURIAM
                                                    OCTOBER 11, 2022

COMMONWEALTH OF VIRGINIA

               FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Clarence N. Jenkins, Jr., Judge

          (Maureen L. White, on brief), for appellant. Appellant submitting
          on briefs.

          (Jason S. Miyares, Attorney General; Matthew P. Dullaghan, Senior
          Assistant Attorney General, on briefs), for appellee. Appellee
          submitting on briefs.


        A jury convicted Devrick Raquan Gail of first-degree murder and use of a firearm in the

commission of a felony. Counsel for Gail filed a brief on his behalf accompanied by a motion for

leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967). A copy of

that brief has been furnished to Gail with sufficient time to raise any matter that he chooses. Gail

has filed a *pro se* supplemental opening brief. After examining the briefs and record in this case, we

affirm the trial court's judgment. We unanimously hold that oral argument is unnecessary because

"the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In so doing, we discard any of Gail's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On the morning of January 2, 2018, Davon Daniels and his girlfriend, Alexus Barbee, were in their bedroom watching television when they heard "a very loud knock" at their apartment door. Barbee remained in the bedroom while Daniels answered the door. Barbee overheard Daniels ask, "Who is it?" She then heard a voice respond, "It's me, it's Quan." Barbee recognized the voice as Gail's. She was familiar with Gail's voice because he had visited Daniels and Barbee in their apartment "[e]veryday" for the preceding two months. From the bedroom, Barbee heard Daniels and Gail talking. After a couple of minutes, Barbee heard gunshots, followed by Daniels calling out to her. Barbee ran into the living room and found Daniels alone, face down on the floor. He told her he had been shot and to call 911.

---

[1] Portions of the record in this case were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues Gail has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

During the recorded 911 call, the 911 dispatcher asked Barbee who had shot Daniels. Barbee spoke with Daniels and asked him, "Who?" Daniels answered, "Quan," and Barbee repeated Quan's name.[2]

Barbee placed the 911 call at 11:22 a.m. Officer M. Bryson reached the apartment at 11:24 a.m.; his body-worn camera recorded his entry into the building and his interaction with Barbee. When Bryson arrived, Daniels was alive and "shaking." Barbee, who was on the floor next to Daniels, related that Daniels had told her "Quan" was the shooter. Bryson's body-worn camera continued to record Barbee as she spoke on the phone and told a third party that "Quan" had shot Daniels.

Firefighters reached the apartment shortly after Bryson. Daniels had a "very faint pulse" when they arrived, but his heart stopped, and by the time he reached a local hospital, he was pronounced dead. An autopsy revealed that Daniels had been shot in the back multiple times, perforating his heart and lung.

Surveillance cameras at Barbee's apartment complex recorded a black Ford Fusion arriving at the parking lot outside her building at approximately 10:42 a.m. on the morning of the murder. After approximately fifteen minutes, Gail and Deondre Wilson exited the black car and entered Barbee's building at 10:58 a.m.

At trial, Wilson identified himself and Gail in the footage. Wilson testified that they entered the building together, but Wilson knocked on his grandmother's first-floor apartment door while Gail approached the stairs. Wilson testified that Daniels's apartment was at the top of the stairs. Wilson saw no one other than Gail in the interior hallway, and the stairwell was open to the first floor. Upon hearing gunfire, Wilson fled from the building and waited outside until he saw Gail

---

[2] At trial, the 911 call was played for the jury. The record includes a transcript of the 911 call that was not admitted into evidence.

exit behind him. Surveillance footage showed Gail and Wilson walking away briskly in opposite directions; neither man returned to the Ford Fusion. When the police searched the Ford Fusion, they found mail and a rental agreement bearing Gail's name.

Four bullet casings were recovered from the murder scene and submitted for forensic analysis. Subsequent forensic analysis determined that each casing was fired from the same gun, possibly a Glock. The casings were compared to a Glock recovered the next day from another apartment building in the same complex following the police pursuit of an individual named Jamie Phillips, but forensic analysis eliminated that gun as the murder weapon.

At the conclusion of the evidence, the jury convicted Gail of first-degree murder and use of a firearm in the commission of a felony. Gail appeals.

ANALYSIS

A. Opening Brief

Gail challenges the sufficiency of the evidence supporting his convictions, asserting that the evidence failed to prove beyond a reasonable doubt he was the perpetrator. He stresses that Daniels's last words on the 911 tape are unintelligible and that he was likely incoherent from loss of blood and diminished brain function. Further, he maintains that he was not in the building long enough to murder Daniels. Gail emphasizes that Barbee testified that "several minutes elapsed" between the time Wilson opened the door and gunfire erupted and she "could not say whether anyone else . . . entered the apartment." He suggests that, based on the Commonwealth's evidence, he lacked sufficient time to murder Daniels. Moreover, based on the appearance of two men approaching Daniels's apartment building after Gail's entry, Gail theorizes that, "[i]f the two men . . . saw [him], it is a reasonable hypothesis that they used [Gail]'s name to gain entry to Daniels's apartment" and murder him. Thus, Gail contends that

the evidence was insufficient to prove he was the perpetrator because it failed to exclude a reasonable hypothesis that the two men committed the offenses. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999). "[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Finney v. Commonwealth*, 277 Va. 83, 89 (2009) (second alteration in original) (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the

Commonwealth has the burden of proof beyond a reasonable doubt." *Vasquez*, 291 Va. at 249-50 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

To satisfy its burden of proof, the Commonwealth must exclude "every *reasonable* hypothesis of innocence, that is, those 'which flow from the evidence itself, and not from the imagination of defendant's counsel.'" *Tyler v. Commonwealth*, 254 Va. 162, 166 (1997) (quoting *Turner v. Commonwealth*, 218 Va. 141, 148 (1977)). This "reasonable-hypothesis principle," however, "is not a discrete rule unto itself" and "does not add to the burden of proof placed upon the Commonwealth in a criminal case." *Vasquez*, 291 Va. at 249-50. The Commonwealth need not "negate what 'could have been' or what was a 'possibility.'" *Nelson v. Commonwealth*, 281 Va. 212, 218 (2011). Thus, while "a factfinder cannot 'arbitrarily' choose, as between two equally plausible interpretations of a fact, one that incriminates the defendant," an arbitrary choice occurs "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez*, 291 Va. at 250. "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Id.* (quoting *Hudson*, 265 Va. at 513).

Here, Daniels remained conscious after he was shot and was sufficiently coherent to tell Barbee to call 911. As Barbee spoke with the 911 operator, she asked Daniels who had shot him, and Daniels answered, "Quan." The jury listened to the 911 call and was able to assess Daniels's response. An "appellate court does not 'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of [the] witnesses.'" *Yahner v. Fire-X Corp.*, 70 Va. App. 265, 273 (2019) (alteration in original) (quoting *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019)). That deference applies even to factual findings regarding recordings, sometimes

- 6 -

referred to as a "silent witness." *Donati v. Commonwealth*, 37 Va. App. 575, 581 (2002) (Benton, J., dissenting). "[R]ecording[s] . . . provide[] depictions of physical facts that present[] a . . . question [for the fact finder]." *Id.* Here, not only did the jury have the opportunity to hear Daniels's final words identifying Gail, Barbee also testified that he told her Gail was the shooter. Moreover, she repeated his identification to the 911 operator, Bryson, and a third party immediately after the shooting.

Although Gail asserts that Daniels's identification of him was not credible because his cognitive capacity was compromised by his injuries, Daniels's identification was corroborated by other evidence. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not inherently incredible as a matter of law when it was corroborated by other evidence). Barbee recognized Gail's voice, heard him identify himself by name, and heard him talking to Daniels immediately before the shooting. Surveillance footage depicted Gail and Wilson arriving in a black Ford Fusion before the murder and then approaching Daniels's apartment building shortly before the shooting. Wilson confirmed that he and Gail entered the building minutes before the murder and that Gail approached the stairs to Daniels's apartment in the interior hallway. Although the entrance to Daniels's apartment was visible from the first floor, Wilson saw no one else in the interior hallway before he heard gunfire. Upon hearing gunfire, Wilson fled the building and waited; moments later, Gail emerged and stood next to Wilson briefly before the two men parted ways and walked in different directions. Documents linked to Gail were found in the car he and Wilson drove to the scene of the murder.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Wilson's testimony and the surveillance

footage demonstrated that no one else entered the building before Daniels was shot. Although Gail suggests that other individuals depicted in surveillance footage near Daniels's building could have committed the murder, the apartment surveillance footage showed the two men suddenly retreating to the parking lot shortly before Gail and Wilson exited the building, permitting a rational inference that the two men retreated when they heard gunfire and played no role in Daniels's murder. Viewed as a whole, the evidence supported a rational finding that Daniels's identification of Gail was credible and that Gail was the perpetrator. Accordingly, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Gail was guilty of first-degree murder and use of a firearm in the commission of a felony.

## B. *Pro Se* Supplemental Opening Brief

In his *pro se* supplemental opening brief, Gail presents eighteen assignments of error.[3] Generally, he challenges certain evidentiary rulings and the jury selection process. He also asserts that his court-appointed counsel had a conflict of interest, depriving him of due process and effective assistance of counsel. Finally, he maintains that the Commonwealth failed to disclose certain potentially exculpatory emails linking the murder to a third party, thereby violating his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree.

In reciting the facts pertinent to Gail's *pro se* supplemental opening brief, we continue to "recite the [facts] 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). At trial, Gail called Detective Sleem, the lead detective investigating Daniels's murder, to testify as a defense witness. Before Sleem took the stand, however, the Commonwealth requested that Gail proffer Sleem's testimony to avoid testimony

---

[3] Gail also includes two additional arguments under headings 19 and 20 that are not encompassed by his assignments of error.

"that m[ight] cause a mistrial." The Commonwealth anticipated that Gail might intend to explore the "recovery of th[e] weapon" in the neighboring apartment the day after the shooting. Although forensic analysis had excluded that gun as the weapon involved in Daniels's murder, it had led to firearm charges against an individual named Jamie Phillips, and Gail's co-defense counsel, Mr. Barbour, who was a former Commonwealth's attorney, had investigated and *nolle prosequied* the charges against Phillips. Before Sleem testified, the Commonwealth stated for the record that Barbour had emailed Sleem about Phillips during his tenure as a Commonwealth's attorney and "actually ha[d] knowledge of that file."

Barbour's co-counsel responded that the Commonwealth had apprised him of "this issue" before trial[4] and defense counsel "did a thorough analysis to determine whether or not there might be any potential conflict of interest under the Rules of Professional Responsibility, and essentially there is none, whatsoever." Defense counsel emphasized that the Commonwealth had confirmed that Gail had been provided all exculpatory evidence and that Barbour's only role in the Phillips weapon investigation was to *nolle prosequi* the charges against Phillips. Gail proffered that the testimony he expected to elicit from Sleem was that "item fourteen," the gun tested in the forensic analysis report, was recovered at a nearby apartment building the day after Daniels's murder. Further, he proffered that Sleem would testify that, based on police reports, the gun was recovered from that apartment after the police pursued Phillips to the apartment and searched it.

The Commonwealth objected that any information Sleem could provide would be hearsay. Defense counsel responded that Sleem's testimony "would . . . be relevant to the scope and thoroughness of her investigation[.]" Defense counsel also stated, "if there is an objection to

_____

[4] In fact, Gail had cross-examined Barbee about Phillips, the subject of Barbour's and Sleem's communications.

a potential conflict, I am happy to have a candid conversation with Detective Sleem, but I can't fathom what potential conflict could exist." Defense counsel continued, "If there are emails the Commonwealth is referencing between [Barbour] and Detective Sleem concerning the case that are substantive in nature, I don't know what those are. [Barbour] has no recollection of it, whatsoever." Gail did not ask that the Commonwealth produce the emails or seek a continuance to review them.

At the Commonwealth's behest, defense counsel confirmed in open court that Gail had been apprised of Barbour's involvement in the Phillips firearm investigation. Barbour's co-counsel stated, "In the presence of all parties, I have advised Mr. Gail as to all facets of the situation that have been made aware [sic] to me. He doesn't have any objection with proceeding [sic] to trial as his counsel." The trial proceeded, and Gail called Sleem as a witness. Sleem's testimony was hampered by hearsay issues, but he did testify that he attempted to interview Phillips the day after Daniels's murder in connection with a firearm that was recovered from a building in Daniels's apartment complex.

After the jury convicted Gail, he moved to set aside the verdict, claiming that Barbour's involvement in Phillips's prosecution created a conflict of interest that interfered with his ability to call Phillips, "a potentially relevant" defense witness. Gail maintained that he had directed Barbour to subpoena Phillips and call him as a witness, but Phillips was not subpoenaed and did not testify. Gail asserted that, due to Barbour's conflict of interest, he had been denied his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process. Gail proffered that, "[u]pon information and belief, Mr. Phillips's testimony would have cast doubt on whether Defendant possessed a firearm and/or whether Defendant shot the victim[.]" He asserted in his motion that the trial court should have declared a mistrial upon learning of Barbour's conflict of interest. In the same motion, Gail argued that the

Commonwealth had withheld exculpatory evidence, i.e., a recorded jailhouse visit between Gail and Wilson in which Wilson allegedly admitted he had lied to the police about Gail's involvement in the murder.

The trial court held two hearings on Gail's motion. During the first hearing, Gail asserted that he never consented to Barbour continuing to represent him after he learned of the conflict. He also maintained that he was entitled to a new trial because the Commonwealth did not disclose the Barbour email exchange with Sleem until after trial. In support of his motion, Gail presented a February 6, 2018 email from then Assistant Commonwealth's attorney Barbour to Sleem forwarding an email chain between Barbour and a police officer pertaining to the Phillips investigation, including forensic analysis of the recovered gun. The emails did not refer to Daniels's murder.

The Commonwealth agreed that the email chain had not been provided to Gail before trial but stressed that his attorneys had been informed of its existence. The Commonwealth emphasized Gail's attorneys had been informed during discovery of "the other weapon found related to Mr. Phillips arrest" and had received "a disc of photos" from the scene where the weapon was recovered. It had also provided Gail's counsel in "May of 2018, the actual written statement from the leaseholder describing what happened when Mr. Phillips came to the house." The Commonwealth stated that Gail's attorney had been advised before trial "that [the Phillips] weapon was not the murder weapon." In its written response to Gail's motion, the Commonwealth also noted that Phillips was, in fact, present at trial and available to testify. Finally, the Commonwealth emphasized that Wilson's "jail visit" was not recorded because the jail recording system had malfunctioned on the day in question, that no recordings of visits with any inmates existed, and that one of Gail's former attorneys had even been provided funds to verify the malfunction.

Gail, who was represented by new counsel at the hearing on his motion to set aside the verdict, never proffered Phillips's expected testimony, but he did proffer erroneously that "there [wa]s a good faith question as to whether or not that was the firearm that resulted in the decedent's death." He asserted that "[t]hat [wa]s something . . . that could have been . . . introduced during the trial. [But] Mr. Barber [sic] could not have done that." After the Commonwealth reiterated that the gun had been excluded forensically as the murder weapon, Gail asserted that he was nevertheless entitled to argue that issue to the fact finder as a hypothesis of innocence. The Commonwealth responded that the evidence about Phillips was available to Gail before trial, that Phillips was present during trial, and that Gail had expressly waived any conflict of interest regarding Barbour. At the conclusion of the hearings, the trial court denied the motion to set aside the verdict.[5]

1. Rule 5A:20 (*Pro se* Assignments of Error 7, 8, 9, 10, 11, 12, 14, 15, 18 and Arguments 19 and 20)

With respect to assignments of error 7 through 12, 14, 15, and 18, Gail's *pro se* brief does not comply with Rule 5A:20(e) because it cites no legal authority other than general references to his constitutional rights and offers no supporting argument. "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'" *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "Unsupported assertions of error 'do not merit appellate consideration.'" *Id.* "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which [Gail] may dump the burden of argument and research." *Id.*

---

[5] Gail filed several *pro se* post-verdict motions that the trial court did not address. Accordingly, we do not include them in our analysis.

"[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a[n assignment of error] as waived.'" *Atkins v. Commonwealth*, 57 Va. App. 2, 20 (2010) (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)). A *pro se* litigant "is no less bound by the rules of procedure and substantive law than a defendant represented by counsel." *Townes v. Commonwealth*, 234 Va. 307, 319 (1987); *see also Francis v. Francis*, 30 Va. App. 584, 591 (1999) ("Even *pro se* litigants must comply with the rules of court.").

Gail utilized the "'throw everything at the wall and hope something sticks' approach to appellate advocacy" that this Court has previously condemned. *Coe v. Coe*, 66 Va. App. 457, 470 (2016) (quoting *Fadness*, 52 Va. App. at 850-51). This "tactic 'is as unappreciated as it is ineffective.'" *Id.* (quoting *Fadness*, 52 Va. App. at 851). "When a party believes the circuit court erred, it is the duty of that party 'to present that error to us with legal authority to support their contention.'" *Id.* (quoting *Fadness*, 52 Va. App. at 851). With respect to assignments of error 7 through 12, 14, 15, and 18, Gail did not do so. Because Gail's failure to comply strictly with the requirements of Rule 5A:20 is significant, he has waived these assignments of error. *See Parks*, 52 Va. App. at 664 ("[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'") (quoting *Jay v. Commonwealth*, 275 Va. 510, 520 (2008)).

Further, with respect to assignments of error 12, 15, and 18, Gail's *pro se* brief does not comply with Rule 5A:20(c). Rule 5A:20(c) requires that "[a]n exact reference to the page(s) of the transcript, written statement of facts, record, or appendix where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken[.]" It also provides that,

> [i]f the error relates to failure of the . . . court below to rule on any
> issue, error must be assigned to such failure to rule, providing an

> exact reference to the page(s) of the transcript . . . [or] . . . record
> . . . where the alleged error has been preserved in the tribunal
> below, and specifying the opportunity that was provided to the
> tribunal or court to rule on the issue(s).

Rule 5A:20(c).

Finally, Gail's *pro se* opening brief violates Rule 5A:20(c) because it presents arguments that are not related to an assignment of error. Under the heading "Assignments of Error," Gail presents eighteen assignments of error; however, despite the lack of assignments of error numbered 19 and 20, he includes additional arguments numbered 19 and 20.[6] "An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017). We are "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017). "Consequently, we do not consider issues touched upon by the appellant's argument but

---

[6] Under heading 19, Gail asserts that "[t]he Commonwealth withheld exculpatory video taken by someone play [sic] while Deondre [Wilson] testified." Under heading 20, Gail contends that "[t]he trial court erred in not striking multiple jurors for cause who all expressed an inherent bias."

not encompassed by his assignment of error." *Id.* at 290.  Because Gail's arguments in headings 19 and 20 are not encompassed within his assignments of error, we do not address them.[7]

Accordingly, based on Gail's significant failures to comply with Rule 5A:20, he has waived the issues in assignments of error 7 through 12, 14 through 15, and 18, as well the arguments in headings 19 and 20.  We therefore decline to consider these arguments.

### 2.  Conflict of Interest (Assignments of Error 1, 2, 3)

Gail asserts that the trial court erred by appointing Barbour as one of his attorneys because he was "disqualified by an actual conflict of interest to represent him at trial."  In related arguments, Gail contends that the trial court erred by failing to conduct "a formal inquiry into . . . Barbour['s] . . . actual conflict," as "the trial court knew or reasonably should have known [of the conflict] from the record," and further, that the trial court should have inquired whether Gail had "in fact waived" Barbour's conflict "knowingly and intelligently after full disclosure."  Gail

---

[7] We also conclude that Gail failed to preserve the issue presented under heading 20. Gail asserts that the trial court erred by not striking multiple jurors for cause after they "expressed an inherent bias."  Specifically, he identifies four jurors by name whom he alleges should have been struck for cause.  He cites "voir dire" as the place in the record where he preserved this assignment of error, but nothing in the record demonstrates that Gail moved to strike the four jurors in question or that he objected to the trial court's decision to seat them.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  Under the rule, "a specific argument must be made to the trial court at the appropriate time, or allegation of error will not be considered on appeal."  *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (*en banc*).  "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review."  *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011).  Gail does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards*, 41 Va. App. at 761.  Because the requirements of Rule 5A:18 have not been met, Gail has waived this argument.

- 15 -

maintains that, by appointing and allowing Barbour to represent him, he was deprived of his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process.[8]

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "A defendant's right to counsel under the Sixth Amendment is violated by 'an actual conflict of interest [that] adversely affected his lawyer's performance.'" *Kenner v. Commonwealth*, 71 Va. App. 279, 297 (2019) (alteration in original) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)), *aff'd*, 299 Va. 414 (2021). "[I]f the possibility of a conflict of interest is apparent, a trial court has a duty to conduct further inquiry to determine if an actual conflict exists." *Dowell v. Commonwealth*, 3 Va. App. 555, 559 (1987). Yet "[t]he mere possibility of a conflict of interest, which is not apparent or to which no objection is made, prompts no need for a trial court to conduct further inquiry." *Id.* A trial court must conduct further inquiry into an alleged conflict of interest "only when 'the trial court knows or reasonably should know that a particular conflict exists'—which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict." *Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002) (citation omitted) (quoting *Sullivan*, 446 U.S. at 347). A conflict of interest implicates a circumstance that "*affect*[*s*] *counsel's performance*" and does not raise "a mere theoretical division of loyalties." *Id.* at 171.

Here, the mere fact that Barbour represented the Commonwealth in a limited manner in an unrelated criminal investigation does not rise to the level of an apparent conflict of interest. *Cf. Cantrell v Commonwealth*, 229 Va. 387, 393-94 (1985) (holding that an attorney "necessarily

---

[8] To the extent that Gail asserts that he was deprived of effective assistance of counsel due to Barbour's conflict of interest, we do not address that argument. "Claims of ineffective assistance are not cognizable on direct appeal." *Vay v. Commonwealth*, 67 Va. App. 236, 260 (2017); *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001) ("Claims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding.").

incurs a conflict of interest" to "the level of an overwhelming probability" where the attorney "undertake[s] the civil representation of a victim, or the family of a victim, of a crime whose perpetrator he must [also] prosecute" as a special prosecutor). Barbour did not continue to represent the Commonwealth through the time of Gail's arraignment, nor does Gail allege as much. Phillips was not a co-defendant at Gail's trial, and the Commonwealth did not call him as a witness to testify against Gail. *See Dowell*, 3 Va. App. at 561 (holding that the Commonwealth's elicitation of testimony from two witnesses whom defense counsel was also representing in connection with the defendant's same offense "was sufficient to bring to the court's attention a conflict of interest and to trigger an appropriate inquiry"). Gail never proffered any exculpatory evidence that Phillips could have provided in the event he had testified. Thus, he did not demonstrate that Barbour's prior representation of the Commonwealth placed him in the position of having to "serve two masters" at the same time and be thus "infect[ed] . . . with the possibility [of] private vengeance" against Gail. *Cantrell*, 229 Va. at 393-94.

Moreover, Barbour and his co-counsel were in the best position to determine whether Barbour's prior employment with the Commonwealth's attorney posed a significant risk of materially limiting his ability to represent Gail, and Barbour represented through co-counsel that he had no recollection of the Phillips investigation and both defense attorneys proffered that they had researched whether a potential conflict of interest existed and had determined that "there

- 17 -

[wa]s none."[9] *Cf. Carter v. Commonwealth*, 11 Va. App. 569, 574 (1991) (holding that the trial court knew or should have known "a potential conflict of interest clearly existed" after defense counsel represented that his ability to represent the defendant had been seriously compromised).

Thus, we decline to impose a duty on the trial court to conduct further inquiry based on Gail's speculative allegation that Barbour deliberately withheld exculpatory information about Phillips due to a bias in favor of the Commonwealth, where defense counsel reassured the trial court that no such conflict existed and Gail agreed to Barbour's continued representation after his role in Phillips's investigation was disclosed. Accordingly, we hold that the trial court did not commit reversible error by appointing Barbour to represent Gail, by failing to inquire further into any potential conflict of interest, or by failing to engage in a colloquy with Gail to ascertain whether he had "in fact" waived any conflict of interest.

### 3. *Brady*[10] Violation (Assignments of Errors 1, 13)

In support of his conflict-of-interest argument in the first assignment of error, Gail suggests that Barbour's former employment as a Commonwealth's attorney played a role in the Commonwealth's failure to disclose the email chain between Barbour and Sleem until after trial, violating his right to exculpatory evidence under *Brady*, 373 U.S. 83. In his thirteenth

---

[9] "Trial courts must rely in the first instance upon the good faith and good judgment of defense counsel who have an ethical obligation to avoid conflicting representation and to advise the court promptly when a conflict of interest arises." *Dowell*, 3 Va. App. at 559.

Further, Gail cites nothing in the record demonstrating he timely objected to Barbour's continued representation of him. Rule 5A:18. To the contrary, after the matter was brought to the trial court's attention, defense counsel consulted Gail and, through counsel, Gail affirmatively represented that he had no objection to proceeding with Barbour as counsel. "A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006). "The doctrine protects a basic tenet of fair play: No one should be permitted, in the language of the vernacular, to talk through both sides of his mouth." *W. Ref. Yorktown, Inc. v. Cty. of York*, 292 Va. 804, 826 (2016) (quoting *Wooten v. Bank of Am., N.A.*, 290 Va. 306, 310 (2015)).

[10] *Brady*, 373 U.S. 83.

assignment of error, he expressly asserts that the Commonwealth "suppressed exculpatory *Brady* material" in the form of "sensitive emails" between Barbour and the police and other Commonwealth's attorneys.

"In reviewing the denial of a *Brady* motion, the trial court's factual findings will not be disturbed absent clear error. In contrast, we review the trial court's legal conclusions *de novo*." *Church v. Commonwealth*, 71 Va. App. 107, 116 (2019). "Under *Brady*, due process requires that the prosecution disclose evidence favorable to the accused that is material to guilt or punishment." *Id.* at 117. "[T]o establish a *Brady* right to the disclosure of evidence, the defendant must show that the items in question are (1) exculpatory, (2) not disclosed, and (3) prejudicial as a result of the failure to disclose." *Garnett v. Commonwealth*, 275 Va. 397, 410 (2008). "*Brady* does not provide a general right to discovery in criminal cases." *Church*, 71 Va. App. at 116. Thus, the Commonwealth may summarize any potentially exculpatory evidence to a defendant without running afoul of *Brady,* so long as its summary is "complete and accurate." *Garnett,* 275 Va. at 409.

Here, forensic examination of Phillips's gun determined conclusively that it did not fire the casings found in Daniels's apartment. The Commonwealth disclosed the investigation into that weapon and Phillips to Gail before trial, and based on that disclosure, Gail called Sleem as a defense witness. Before trial, Gail never sought a continuance or claimed that the Commonwealth had withheld exculpatory evidence about the Phillips's investigation. Instead, Gail elected to call Sleem as a defense witness and to imply, through his examination, that Phillips was the perpetrator. The record does not support Gail's *Brady* argument because the Commonwealth disclosed the general parameters of the Phillips firearm investigation to him before trial and because the specific email evidence relating to that investigation was not

exculpatory. Accordingly, the trial court did not err by denying Gail's motion to set aside the verdict based on an alleged *Brady* violation.

4. Dying Declaration (Assignment of Error 5)

In the fifth assignment of error, Gail asserts that the trial court erred by admitting "Daniels['s] statement on an altered and digitally modified 911 call." He asserts that Daniels's hearsay identification of him as the shooter should not have been admitted because it did not qualify as a dying declaration and, even if it did, it was not reliable. Gail contends that Daniels's statement was not a dying declaration because Daniels never expressly stated he thought he was dying when he made the statement. He also maintains that, even if Daniels believed he was dying, he was not lucid when he identified Gail because Daniels mistakenly believed he had been shot in the head.

An appellate court reviews a trial court's decision regarding the admissibility of evidence for abuse of discretion. *Lucas v. Riverhill Poultry, Inc.*, 300 Va. 78, 92 (2021). Although the trial court has discretion, it is not "free to simply act in any way it may deem desirable under the circumstances." *Id.* Rather, "the court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 93 (quoting *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). A deferential standard of review "applies to a trial court's decision to admit statements under the dying declarations exception to the hearsay rule[.]" *Satterwhite v. Commonwealth*, 56 Va. App. 557, 563 (2010). The trial court determines, "not only from the proofs, but from all the circumstances of the case, whether the declarations are admissible." *Id.* (quoting *Swisher v. Commonwealth*, 67 Va. (26 Gratt.) 963, 974 (1875)).

To qualify as a dying declaration, the victim's statement must be made "under a sense of impending death" without any "expectation or hope of recovery" from his mortal wounds. *Id.* at

562 (quoting *Clark v. Commonwealth*, 235 Va. 287, 291 (1988)). "But the victim need not verbalize his sense of impending death." *Id.* The victim's "consciousness [of impending death] may be established . . . by the character and nature of the wound, his appearance and conduct . . . ." *Id.* (quoting *Hill v. Commonwealth*, 43 Va. (2 Gratt.) 594, 608 (1845)).

Applying these principles, we hold that the trial court did not abuse its discretion by admitting Daniels's statement under the dying declaration exception to the hearsay rule. When Daniels made the statement, he had sustained multiple gunshots, perforating his lung and heart. By the time Bryson arrived at the apartment, Daniels could barely move his head. The severity of Daniels's wounds constituted circumstantial evidence from which the trial court could conclude that Daniels "realized that there was no hope" and that his death was impending. *Id.* at 564. Accordingly, the trial court did not abuse its discretion by admitting his statement identifying Gail as his killer.

5. Digital Modification of 911 Call (Assignments of Error 4, 5, 6)

Gail asserts that the trial court erred by allowing "an altered and digitally modified 911 call" into evidence, by admitting Daniels's statements on the "altered" recorded call, and by allowing Barbee to "interpret" what Daniels said during the "altered" call. Without any factual or legal support, Gail maintains that "[t]he Commonwealth altered the recording to their benefit and to [Gail's] prejudice." He claims that the trial court's reliance on *Ramseur v. Commonwealth*, Record No. 1122-16-4 (Va. Ct. App. Dec. 12, 2017), was misplaced because *Ramseur* involved only amplification, while Donald Miller, an IT specialist, testified that he used an editing program that altered the "binary code" of the 911 call recording. The record does not support Gail's assertion.

Miller expressly testified that he merely "boost[ed] the volume" on the segment of the recording containing Daniels's statement without "delet[ing] or chang[ing] any of the content of

th[e] recording." He denied altering the binary code of the recording. After considering Miller's testimony, the trial court found that the recording had not been altered. Accordingly, Gail's argument lacks merit.

Further, we find no merit in Gail's argument that the trial court erred by allowing Barbee to "interpret" Daniels's statement on the 911 call. As the trial court correctly ruled, Barbee could testify regarding what Daniels said to her because his statement was admissible under the hearsay exception for dying declarations.

### 6. Failure to Preserve Jailhouse Recording (Assignment of Error 16)

Gail asserts that the Commonwealth's attorneys "failed to preserve [Wilson's] exculpatory recorded video visit" with Gail during Gail's incarceration in the Richmond City Jail. He maintains that Wilson admitted during the visit that he had lied to the police "about [Gail's] involvement" in the murder.

Gail's assignment of error does not challenge a ruling by the trial court. Our review is limited to issues raised in the assignment of error. *Banks*, 67 Va. App. at 289. An issue that is not encompassed by an assignment of error is waived. *Simmons v. Commonwealth*, 63 Va. App. 69, 75 n.4 (2014). Accordingly, as Gail does not contest a ruling by the trial court, there is nothing for us to review. *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

### 7. Admission of Jailhouse Calls 45 and 561 (Assignment of Error 17)

Gail asserts that the trial court erred by admitting two recorded jailhouse phone calls into evidence. With respect to jailhouse call "45," he contends that the evidence established that the call originated from another inmate's "PIN num[b]er." Although he concedes that Lieutenant Miracle identified his voice on the call, Gail challenges the identification, asserting that "Miracle is not a voice expert." Gail argued below that Miracle's testimony identifying Gail's voice on jailhouse calls from other inmates' PIN numbers was insufficient to authenticate the recordings,

but he never objected that Miracle could not identify his voice unless he was qualified as a "voice expert."[11]

"Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Id.* (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). "Of critical importance in this case is the principle that '[n]ot just any objection will do.'" *Jones v. Commonwealth*, 71 Va. App. 597, 606 (2020) (alteration in original) (quoting *Bethea*, 297 Va. at 743). Instead, a trial court must be alerted to the precise issue to which a party objects. *Kelly v. Commonwealth*, 42 Va. App. 347, 354 (2004). Here, Gail presents different arguments on appeal than he did to the trial court. He does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). Accordingly, as Gail raises a different argument on appeal than he did below, he has failed to preserve this issue. Rule 5A:18.

Gail also asserts that he had never heard call 45 previously and that the Commonwealth had not produced it during discovery. With regard to call 561, he asserts that it was "taken out of context" and that he "did not ever hear the telephone call played." Gail does not develop these arguments further or provide any supporting legal authorities. Accordingly, he has failed to comply with Rule 5A:20(e). We conclude that the defect in his brief is significant and therefore, we decline to consider this argument. *Parks*, 52 Va. App. at 664.

---

[11] Gail objected to Miracle's characterization of Gail's voice as "unique" on the basis that Miracle was not an expert, but he did not object generally to Miracle's testimony identifying Gail's voice in the jailhouse calls.

CONCLUSION

Accordingly, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. Gail's motion for the appointment of new counsel is denied. This Court's records shall reflect that Devrick Raquan Gail is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed*.